UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DAVID ALICEA, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | No. 17-cv-11065-DJC |
| THE SPAULDING REHABILITATION HOSPITAL CORPORATION and DANIEL CLARKE, | ) ) ) ) ) | |
| Defendants. | ) ) ) ) | |

MEMORANDUM AND ORDER

CASPER, J.                                                                                                                     March 5, 2018

I.        Introduction

Plaintiff David Alicea ("Alicea") has filed this lawsuit against Defendants Spaulding Rehabilitation Hospital Corp. ("Spaulding") and Daniel Clarke ("Clarke"), arising out of alleged conduct by the Defendants while Alicea was employed by Spaulding and supervised by Clarke. Alicea asserts claims under Title VII (Count I); the Family and Medical Leave Act (Count II); the Americans with Disabilities Act (Count III); Mass. Gen. L. c. 151B (Count IV); and claims for intentional interference with contractual relations (Count V) and intentional infliction of emotional distress (Count VI). D. 1 at 7-12. He asserts the first three claims against Spaulding, Count IV, the Chapter 151B claim against both Defendants and Counts V and VI only against Clarke. Clarke now moves to dismiss all the claims asserted against him; namely, the claims for violation of Chapter 151B (Count IV), intentional interference with contractual relations (Count V) and

1

intentional infliction of emotional distress (Count VI). D. 12-2 at 1. Clarke also moves to strike certain exhibits from Alicea's opposition. D. 14. For the reasons stated below, the Court DENIES the Clarke's motion to strike, D. 14, and GRANTS in part and DENIES in part Clarke's motion to dismiss, D. 12.

## II. Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). The Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007).

## III. Factual Background

The following facts are based upon the allegations in Alicea's complaint, D. 1, and are accepted as true for the consideration of the motion to dismiss. Alicea began working as a cook for Spaulding on or about September 17, 2012, reporting to the Executive Chef, William Landolfi ("Landolfi"). D. 1 ¶ 7. Throughout his employment with Spaulding, Alicea suffered from a medical condition that required him to take short absences from work once or twice a month. D. 1 ¶ 13. Landolfi accommodated Alicea's absences and gave Alicea a positive performance review. D. 1 ¶ 15. On or about May 26, 2013, Alicea was promoted to the position of First Cook. D. 1 ¶ 8.

In or around mid-2014, Clarke became the new Executive Chef. D. 1 ¶ 16. Clarke criticized Alicea for his intermittent absences and provided Alicea with "a false, negative performance evaluation." D. 1 ¶¶ 17-23. Alicea lodged complaints about Clarke's behavior with Joseph Downey ("Downey"), a "Senior Human Resources Generalist," but no one acted on those complaints. D. 1 ¶¶ 25-28. On or about December 15, 2014, Clarke wrote a written warning to

Alicea, stating that Alicea had left work without informing Clarke, even though Alicea states that he had informed Clarke that he was leaving work. D. 1 ¶ 29.

On or about January 19, 2015, Alicea was sexually assaulted by a coworker identified only as "Remy." D. 1 ¶¶ 31, 38. Alicea did not report the incident to Spaulding at the time. D. 1 ¶ 35. On January 22, 2015, the next day Alicea was scheduled to work, Clarke and Downey informed Alicea that Remy had accused Alicea of threatening Remy on or about January 19, 2015. D. 1 ¶ 36. Alicea then reported that Remy had sexually assaulted him. D. 1 ¶ 37. Upon hearing Alicea's report, Clarke laughed at Alicea and Downey had a humorous expression on his face. Id. Downey responded that Remy's actions did not constitute sexual assault. D. 1 ¶ 38. On or about January 29, 2015, Alicea was terminated from his job at Spaulding and Spaulding stated that reason was the threat against Remy. D. 1 ¶ 40-41. Alicea alleges that the stated reason was pretext and the actual reason was unlawful discrimination against Alicea based upon his medical condition and retaliation against Alicea. D. 1 ¶ 41.

On or about January 29, 2015, Alicea filed a charge of discrimination against Spaulding with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC"). D. 1 ¶ 47. In the charge, Alicea did not name Clarke as a respondent, but did discuss Clarke's actions in the substance of the charge. D. 1 ¶ 48. After Spaulding filed its statement with MCAD, which Clarke signed and affirmed, Alicea filed a rebuttal in which he alleged that Clarke acted with animus against him, harassed him, discriminated against him and unlawfully retaliated against him. D. 1 ¶¶ 49-50.

## IV. Procedural History

Alicea instituted this action on June 9, 2017. D. 1. Clarke has now moved to dismiss. D. 12. Clarke has also moved to strike certain exhibits in Alicea's opposition. D. 14. The Court heard the parties on the pending motions and took Clarke's motions under advisement. D. 19.

3

## V. Discussion

### A. Chapter 151B Claim (Count IV)

Clarke moves to dismiss Alicea's claim under Chapter 151B, on the ground that Alicea did not name Clarke as a respondent in his MCAD charge and, therefore, did not exhaust his administrative remedies as required by the statute. D. 12-2 at 6. "A plaintiff wishing to pursue a discrimination claim under G.L. c. 151B must first submit a complaint to the MCAD within six months of the alleged unlawful conduct." Andrews v. Arkwright Mut. Ins. Co., 423 Mass. 1021, 1021 (1996). "[T]here may be an exception where a plaintiff filed an MCAD complaint against another party and the unnamed party had notice and opportunity to participate in the proceedings." Butner v. Dep't of State Police, 60 Mass. App. Ct. 461, 468 n.14 (2004).

Courts in this district have adopted the position that "if given the opportunity, the Supreme Judicial Court, with reference to the MCAD context, would adopt as eminently reasonable the exception regarding unnamed parties" as expressed by the Massachusetts Appeals Court in Butner. Dyjak v. Baystate Health Sys., Inc., 945 F. Supp. 2d 197, 205 (D. Mass. 2013); see Eichenholz v. Brink's Inc., No. 16-cv-11786-LTS, 2017 WL 1902156 at *4 (D. Mass. May 9, 2017); Chapin v. Univ. of Mass. at Lowell, 977 F. Supp. 72, 76 (D. Mass. 1997); Chatman v. Gentle Dental Ctr. of Waltham, et al., 973 F. Supp. 228, 235 (D. Mass. 1997).

The question, then, is whether Clarke had notice and opportunity to participate in the MCAD proceedings. The charge that Alicea filed with MCAD is attached as an exhibit to the Defendants' motion to dismiss, and the parties do not contest that it is properly considered by the Court. D. 12-1. In the charge, Alicea states that Clarke laughed at Alicea's report that Remy sexually assaulted him and also states that Clarke told Alicea that "they can't have me yelling and making threats in the kitchen and that they had to terminate me." D. 12-1 at 2. The complaint further clarifies that Clarke, at a minimum, had notice of the charge, because he reviewed and

4

signed Spaulding's response to the charge. D. 1 ¶ 50. The complaint also alleges that Alicea, in the rebuttal to Spaulding's statement, specifically identified Clarke as discriminating against him and unlawfully retaliating against him.[1]

Clark contends that the charge alone was not sufficient to put Clarke on notice of the charges against him, because while the charge mentioned Clarke, there were no "individual allegations of discrimination against Clarke." D. 12-2 at 8. Clark also further argues that there is no allegation in the complaint that Clarke ever received the rebuttal. D. 12-2 at 9.

The facts, however, are sufficient to support an inference that Clarke had notice of the charge. Because Clarke signed and affirmed Spaulding's response to the charge, it is reasonable to infer that Clarke was aware of the charge. Based on the repeated mentions of Clarke in the charge, it is reasonable to infer that Clarke was sufficiently on notice that his conduct was at issue in the MCAD proceedings. See Chapin, 977 F. Supp. at 77 (stating that the defendant was on notice of the charge where the charge "rather clearly puts [the defendant's] conduct in issue"). Additionally, because Clarke was involved in creating Spaulding's initial response to the charge, it is reasonable to infer that Spaulding would have informed Clarke of Alicea's rebuttal, especially given that the rebuttal directly alleged discrimination by Clarke. See Eichenholz, 2017 WL 1902156, at *4 (finding it reasonable to infer that an employer told an employee of a charge because the employee was "the focus" of the charge).

The facts also support a reasonable inference that Clarke had the opportunity to conciliate or participate in the MCAD proceedings. Clarke had already participated in the MCAD

---

[1] Clarke filed a motion to strike Exhibits 2-6 of Alicea's opposition to Clarke's motion to dismiss, which include a copy of Alicea's rebuttal statement. D. 14. Because the Court resolves the motion to dismiss without needing to consider Exhibits 2-6, Clarke's motion to strike, D. 14, is DENIED as moot. Exhibit 1, the MCAD charge itself, was specifically referenced in the complaint and the parties do not dispute that it is properly before the Court.

proceedings by signing and affirming Spaulding's response, so it is reasonable to infer that he could have continued his participation if he so chose after Alicea filed the rebuttal. See id; see also Chapin, 977 F. Supp. 2d. at 77 (finding that the defendant had an opportunity to conciliate where the defendant participated in the employer's response to the charge).

The cases cited by the Defendants are not to the contrary. D. 12-2 at 6, 9. In Wright v. CompUSA, Inc., 183 F. Supp. 2d 308, 311 (D. Mass. 2001), the two defendants were either not referenced in the charge or not served with the charge. In Preston v. Second Wind, Inc., 824 F. Supp. 2d 247, 252 (D. Mass. 2011), there was no indication that the defendant had worked with the employer in crafting a response to the charge filed before the MCAD, as occurred here. Accordingly, the Court DENIES Clark's motion to dismiss as to Count IV, the Chapter 151B claim.

### B. Intentional Interference with Contractual, Employment, and/or Advantageous Relations (Count V)

Clarke moves to dismiss Alicea's claim for intentional interference with contractual, employment, and/or advantageous relations on the ground that the complaint does not allege that Clarke intended to interfere with Alicea's employment with Spaulding, or that Clarke acted with any improper means, or that Clarke acted with malice. D. 12-2 at 10-11.

"To make a successful claim for intentional interference with advantageous relations, a plaintiff must prove that (1) he had an advantageous relationship with a third party (e.g., a present or prospective contract or employment relationship); (2) the defendant knowingly induced a breaking of the relationship; (3) the defendant's interference with the relationship, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions." Blackstone v. Cashman, 448 Mass. 255, 260 (2007). Where a plaintiff employee brings suit against an officer of the employer, the element of improper motive or means

6

requires that the plaintiff employee show that the defendant officer had "actual malice," or "a spiteful, malignant purpose, unrelated to the legitimate corporate interest." Id. at 261 (citation omitted).

Three of those elements are met here. The complaint alleges that Alicea was employed by Spaulding, D. 1 ¶ 7, satisfying the first element. The complaint also alleges that Clarke was Alicea's supervisor, D. 1 ¶ 16; harbored animus against Alicea, D. 1 ¶ 89, as shown by Clarke's attempts to get Alicea to resign, D. 1 ¶ 20, and Clarke's filing of an allegedly false performance evaluation, D. 1 ¶ 23; and participated in the meeting wherein Alicea was terminated, D. 1 ¶ 40, from which it is reasonable to infer that Clarke knowingly induced Spaulding to terminate the employment relationship. Clarke does not contest the complaint's showing that Alicea was harmed by Clarke's actions.

The question, then, is whether the complaint adequately alleges that Clarke acted with "actual malice" in participating in Alicea's termination. "[T]he elements underlying a claim for unlawful discrimination may be used to demonstrate malice in the context of a tortious interference claim." Zimmerman v. Direct Fed. Credit Union, 262 F.3d 70, 77 (1st Cir. 2001). Here, Alicea alleges that Clarke retaliated against Alicea based on Alicea's reporting of Clarke's harassment of Alicea regarding Alicea's medical condition, and used the opportunity of the dispute between Alice and Remy as an opportunity to discharge Alicea. D. 1 ¶¶ 41-45. These allegations sufficiently state a claim that Clarke's actions were "more pernicious than mere personal dislike," and thus rose to the level of actual malice. Zimmerman, 262 F.3d at 78. Accordingly, the Court DENIES the motion to dismiss as to Count V, the intentional interference claim.

C. **Intentional Infliction of Emotional Distress (Count VI)**

Clarke also contends that Alicea has not pled facts sufficient to state a claim for intentional infliction of emotional distress. D. 12-2 at 11. The elements of intentional infliction of emotional

distress are: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct, (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiff's distress, and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it." Bennett v. City of Holyoke, 230 F. Supp. 2d 207, 228–29 (D. Mass. 2002) (quoting Agis v. Howard Johnson Co., 371 Mass. 140, 144-45 (1976)), aff'd, 362 F.3d 1 (1st Cir. 2004).

Clarke contends that the complaint fails to plead any specific facts that suffice to show either that Clarke's conduct was "extreme or outrageous" or that the distress experienced by Alicea was so severe that no reasonable person could endure it. D. 12-2 at 12-13. In response, Alicea argues that the complaint illustrates Clarke's allegedly unlawful discriminatory and retaliatory actions, which suffice to state a claim for intentional infliction of emotional distress. The complaint, however, does not describe conduct by Clarke that is so extreme and outrageous such that it would be intolerable in a civilized society, apart from being allegedly unlawful and discriminatory. See Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997). Moreover, the complaint does not allege facts that suffice to show severe emotional distress, because the complaint only generally alleges that Alicea suffered emotional distress. D. 1 ¶¶ 53, 92. Nothing else in the complaint gives rise to a reasonable inference that the emotional distress experienced by Alicea as a result of Clarke's conduct was so severe that no reasonable person could be expected to endure it. See Anjomi v. Kalai, 828 F. Supp. 2d 410, 414 (D. Mass. 2011) (stating that the mere allegation of emotional distress is not sufficient to show that the distress was so severe that no reasonable person could be expected to endure it in an employment discrimination

8

case); Emerson v. Mass. Port Auth., 138 F. Supp. 3d 73, 76-77 (D. Mass. 2015) (holding that emotional distress associated with employment discrimination, including allegedly false accusations of misconduct, did not rise to the requisite level of emotional distress). Thus, the Court ALLOWS Clarke's motion to dismiss Count VI, the intentional infliction of emotional distress claim.

VI.     **Conclusion**

For the foregoing reasons, the Court the Court DENIES the Clarke's motion to strike, D. 14, as moot and GRANTS in part Clarke's motion to dismiss, D. 12, as to Count VI (intentional infliction of emotional distress claim), and DENIES it as to Count IV (Chapter 151B claim) and Count V (intentional interference claim).

**So Ordered.**

/s/ Denise J. Casper
United States District Judge